## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**United States of America**,

        *Plaintiff,*

v.

        **Case No. 3:18-cr-164 (2)**
        **Judge Thomas M. Rose**

**Charles Minor,**

        *Defendant.*

---

### ENTRY AND ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (ECF 77).

---

Pending before the Court is a motion by Defendant Charles Minor for a reduction of sentence under the compassionate release provisions of 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018. (ECF 77). The Government filed a response, (ECF 78), indicating that it does not oppose the motion. Because the motion is well-taken, the Court will grant compassionate release.

### I.    Background

On May 21, 2019, Defendant entered a plea of guilty to Count 3 of a three-count amended indictment, possession with intent to distribute 500 grams or more of methamphetamine. (ECF 15, 39). Defendant was sentenced to 60 months in prison. (Doc # 56.) He is presently incarcerated at FCI Loretto in Pennsylvania. His release date is calculated as

August 2, 2023. The co-defendant, Ronald Edmondson, was sentenced to time served with 3 years of supervised release.

Defendant is 65 years old and married to Hazel (Spears) Minor. If released, he would live in his step-mother's home located at 2919 Lakeview Avenue, Dayton, Ohio. Upon his release, Defendant has employment waiting with the United States Postal Service in Dayton, Ohio, with Keith Tramell as his supervisor.

On April 13, 2020, Defendant was informed by the Warden at FCI Loretto that Defendant's request to participate in the Elderly Offender Program was approved. Defendant was informed that he would be leaving the facility to complete the balance of his sentence at home on April 29, 2020. However, on April 28, 2020, Defendant was informed that he would not be released to home confinement because he had not completed at least fifty percent of his sentence.

On the same date as this denial, Defendant filed a pro se Motion for Court Order Granting Immediate Release to Home Confinement Pursuant to the Cares Act. That Motion did not lead to Defendant's release. On June 4, 2020, Defendant submitted a Request for Compassionate Release/Reduction in Sentence Consideration to the Warden at FCI Loretto. This Request was denied on June 16, 2020.

Defendant has a history of serious medical conditions that may well be exacerbated by the ongoing COVID-19 health emergency. Defendant has been diagnosed with an enlarged prostate and a kidney stone, which have made urination difficult and painful. He has a persistent fungal infection on the sole of a foot that may well spread to his entire foot. Most seriously, Defendant has significant and chronic heart disease, which, coupled with varicose veins,

2

hypertension, and other circulatory issues that require the wearing of compression socks, creates life-threatening conditions.

In Cambria County, Pennsylvania, as of May 10, 2021, the risk level for COVID19 remained at "Very High." (https://covidactnow.org/us/pennsylvania-pa/county/cambria_county/?s=1823741.) In May, only 40% of the county population had been vaccinated, and the positive test rate was at 6.4%, which is rated as Moderate, and new daily cases were 27.7 per 100K, which is rated as Very High. Id. FCI Loretto is in Cambria County, and is the home of most, if not all, the staff at the prison. At present, both inmates and staff continue to be infected by the coronavirus. Presently, 688 inmates and 65 staff members at Loretto have contracted COVID-19.

Minor's wife Hazel suffers from spinal stenosis, ankylosing spondylitis, sciatic nerve damage, and vertigo. She is in constant pain from her conditions and is in need of ongoing care. Defendant would be a help to her, both physically and emotionally. Additionally, Defendant has a support system in his church. His wife is a minister, and before his arrest, Defendant was active in his church community and participated in services. This community would be available to provide needed care and support.

On March 27, 2020, the CARES Act was signed into law in response to the COVID-19 pandemic, expanding the scope of the home confinement statute. The CARES Act authorized the Attorney General to remove the time limits on home confinement under 18 U.S.C. §3624(c)(1)-(2). It permits the BOP to release inmates to home confinement even if they have not served 90% of their sentence, or if they have more than six months left to serve. Specifically, the CARES Act provides:

3

> During the covered emergency period, if the Attorney General
> finds that emergency conditions will materially affect the
> functioning of the Bureau, the Director of the Bureau may lengthen
> the amount of time for which the Director is authorized to place a
> prisoner in home confinement . . ., as the Director deems
> appropriate.

See H.R. 748 §6002 at Div. B, Tit. II, § 12003(b)(2).

On April 3, 2020, Attorney General Barr issued a memorandum in which he made the requisite finding that emergency conditions will materially affect the functioning of the BOP. Attorney General Barr directed the BOP to release inmates from institutions that are already overcome by COVID-19, naming three facilities in particular and extending the order to "similarly situated facilities where you determine that COVID-19 is materially affecting operations."

COVID-19 is a viral disease for which there is currently neither treatment nor cure. It is highly infectious and particularly likely to spread among populations where individuals are incapable of remaining physically distant from one another. Among viral diseases, the mortality rate for COVID-19 is high.

Public health experts have warned that incarcerated individuals "are at special risk of infection" and are "less able to participate in proactive measures to keep themselves safe." *Achieving a Fair and Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States* (March 2, 2020), at https://bit.ly/2W9V6oS. Prior to the vaccine, the conditions in BOP facilities provided a hospitable environment for COVID-19 to spread. Joseph A. Bick, *Infection Control in Jails and Prisons*, Clinical Infectious Diseases 45(8): 1047-1055 (2007), available at https://doi.org/10.1086/521910; Vice, *Sick Staff, Inmate Transfers, and No Tests:*

4

*How the U.S. is Failing Federal Inmates as Coronavirus Hits* (Mar. 24, 2020), available at https://www.vice.com/en_us/article/jge4vg/sick-staff-inmate-transfers-and-no-tests-how-the-us-is-failing-federalinmates-as-coronavirus-hits.

As a result of these concerns, on May 18, 2020, the Department of Justice issued internal guidance which directs that the Government concede that defendants who have certain CDC risk factors can establish "extraordinary and compelling reasons" that warrant a reduction in sentence. (See Government's Supplemental Response, *United States v. Albert M. Firebaugh IV*, No. 16-20341 (S.D. Fla June 1, 2020), ECF 43.

## II. Analysis

Minor asks the Court to grant him a reduction in sentence as permitted by 18 U.S.C. § 3582(c)(1)(A)(i) and to consider what he alleges are extraordinary and compelling reasons for doing so. Section 603(b) of the First Step Act, which was signed into law on December 21, 2018, modified 18 U.S.C. § 3582 to allow a defendant to bring a motion on his or her own behalf either "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); Pub L. No. 115-391, 132 Stat. 5194; *see also United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020) ("If the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must fully exhaust all administrative rights to appeal with the prison or wait 30 days after his first request to the prison," and "[p]risoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals

5

available to them") (internal quotation marks omitted) (alterations adopted).

A district court has limited authority to modify a sentence. "Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Hammond*, 712 F.3d 333, 335 (6th Cir. 2013). Section 3582(c)(1)(A) grants such authority in certain limited circumstances. It provides in part:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court ... may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C.] § 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).

Thus, the Court can modify a term of imprisonment if it finds that (1) "extraordinary and compelling reasons warrant such a reduction," (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) such a reduction is appropriate "after considering the factors set forth in § 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020); *United States v. Spencer*, No. 20-3721, 2020 U.S. App. LEXIS 28051, at *4, 2020 WL 5498932 (6th Cir. Sept. 2, 2020).

While judges "have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *United States v. Jones*, No. 20-3701, – F.3d –, 2020 WL 6817488 at *9 (6th Cir. November 20, 2020), the Court references U.S.S.G. § 1B1.13 for guidance. Therein, the Sentencing Commission identifies four circumstances in which

6

"extraordinary and compelling reasons" may exist. *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in § 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). United States Sentencing Commission, Guidelines Manual, § 1B1.13, at cmt. n.1 (Nov. 1, 2018) (Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)). Those four circumstances are: (A) Medical Condition of the Defendant; (B) Age of the Defendant; (C) Family Circumstances; and (D) other extraordinary and compelling reasons. *Id.* Each of the four circumstances has its own parameters. *Id.* Commentary also confirms that, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." *Id.* at cmt. n.3; *see also United States v. Keefer*, No. 19-4148, 2020 U.S. App. LEXIS 32723, at *6-7, 2020 WL 6112795 (6th Cir. Oct. 16, 2020) ("[i]n Application Note 1 to § 1B1.13, the Commission also listed the 'extraordinary and compelling reasons' that might entitle a defendant to a sentence reduction").

The combination of Minor's medical condition, his age and family circumstances constitute extraordinary and compelling reasons for early release.

The policy statement also encourages the Court to consider whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*; *see also Kincaid*, 802 F. App'x at 188; *Spencer*, 2020 U.S. App. LEXIS 28051, at *4 ("[t]he district court must also find that the defendant is not a danger to the safety of any other person or to the community") (internal quotation marks omitted). Section 3142(g) provides

factors to be considered in making that "danger to the safety" determination.

Specifically, 18 U.S.C. § 3142(g) states:

> (g) Factors to be considered. The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of § 1591 [18 USCS § 1591], a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g); *see also United States v. Jones*, No. 20-3748, 2020 U.S. App. LEXIS

32451, at *4-5 (6th Cir. Oct. 14, 2020).

8

The factors set forth in § 3553(a) "include, among others, 'the nature and circumstances of the offense'; the defendant's 'history and characteristics'; the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment, and afford adequate deterrence; and the need to avoid unwarranted sentencing disparities." *Jones*, 2020 U.S. App. LEXIS 32451, at *6 (quoting 18 U.S.C. § 3553(a)(1), (2), (6)).

Because of his medical condition, and considering the nature of his criminal history, the Court does not find Minor to be a threat to the safety of the community.

As of mid-October 2020, the CDC has concluded that individuals with certain conditions such as smoking, Type II diabetes, chronic heart problems, cancer, immuno-compromised due to organ transplant, and obesity "are at an increased risk for severe illness from COVID . . ." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed July 23, 2021). During the current COVID-19 pandemic, an inmate who presents one of the risk factors on that list, as confirmed by medical records, and who is not expected to recover from that condition, would satisfy the extraordinary and compelling prong of the compassionate release policy statement -- even if that condition in ordinary times would not allow compassionate release.

If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably could be found to be "serious" and to "substantially diminish[ ] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have

constituted an "extraordinary and compelling reason" absent the risk of COVID-19. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I). But as part of its analysis of the totality of circumstances, the Court should consider whether the inmate is more likely to contract COVID-19 if he or she is released than if he or she remains incarcerated. That will typically depend on the inmate's proposed release plans and whether a known outbreak has occurred at his or her institution.

The portion of the sentence Minor has served reflects the seriousness of the offense, affords adequate deterrence, and protects the public. See 18 U.S.C. § 3553(a)(2). In view of the § 3553 sentencing factors, compassionate release is proper here. *See* § 3582(c)(1)(A).

## III. CONCLUSION

Minor meets the requirements necessary to be granted relief under 18 U.S.C. § 3582(c)(1)(A). Thus, the Court **GRANTS** Motion for a Reduction of Sentence Under the Compassionate Release Provisions Pursuant to 18 U.S.C. 3582(c)(1)(A) and the First Step Act of 2018. ECF 77.

The motion for compassionate release (ECF 77) is **GRANTED**. The term of incarceration of 60 months previously imposed in that case is hereby reduced to a term of time served. This order is **STAYED** for fourteen days from the date of this order to facilitate the BOP's ability to quarantine defendant to protect the community from the potential spread of COVID-19.

The Court further orders that defendant shall serve a three-year term of supervised release which will commence upon his release from incarceration. While on this term of supervised release, defendant shall comply with the standard conditions of supervision in this district, and with the following special conditions of supervision: The defendant shall participate in a

10

program of testing and treatment for alcohol and controlled substance abuse, as directed by the U.S. Probation Office, until such time as the defendant is released from the program by the probation office.

Defendant is instructed that he must report to the probation office in the federal judicial district where he is authorized to reside within 72 hours of his release from imprisonment, unless the probation officer instructs him to report to a different probation office or within a different time frame. Defendant should call the Probation Office at (937) 512-1450 to receive instructions on how to report.

**DONE** and **ORDERED** in Dayton, Ohio on Thursday, August 19, 2021.


s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE